IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAROLYN A. ROBINSON,                  *

     Plaintiff *pro se*,                  *

          v.                  *     Civil Action No.: RDB 05-2130

TSYS TOTAL DEBT MANAGEMENT,           *
INC., a/k/a TSYS TOTAL DEBT
MANAGEMENT                            *

     Defendant.                  *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

<u>MEMORANDUM OPINION</u>

Pending before this Court are two motions: Defendant TSYS Total Debt Management, Inc., a/k/a TSYS Debt Management's ("TDM" or "Defendant") Motion for Summary Judgment and Plaintiff Carolyn A. Robinson's ("Robinson" or "Plaintiff") Motion for Partial Summary Judgment. The primary issue raised by these motions is whether Defendant's conduct with respect to Plaintiff's credit information violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") or the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties' submissions have been reviewed and no hearing is necessary. *See* D. Md. Loc. R. 105.6 (2004). For reasons stated below, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.

BACKGROUND

The background of this case must be viewed in the context of the Defendant having taken one act of requesting a likelihood of collection score for the Plaintiff from a third party vendor. The *pro se* Plaintiff has not documented any facts that would indicate that the Defendant took any other actions.  Even reviewing the facts in the light most favorable to the Plaintiff, there are simply no genuine issues of material fact.

In her Complaint, Plaintiff alleges that on or about November 2, 2004, Defendant engaged in "continued collection activity" by "obtain[ing] a consumer report on Plaintiff." (Compl. ¶ 10.)  Plaintiff also alleges that on or about November 2, 2004, Defendant "entered an 'inquiry' about Plaintiff to a credit reporting agency ("CRA") Experian Information Solutions . . . [that] contained derogatory information that Plaintiff had not paid a bill allegedly incurred by her." (*Id*. ¶ 17.)  Finally, Plaintiff alleges that Defendant failed to take appropriate corrective action after Plaintiff notified Defendant of its alleged misconduct.  (*Id.* ¶ 19.)

In its summary judgment papers, Defendant notes that it operates a division known as the National Attorney Network ("NAN") that licenses software to law firms throughout the United States.  (Def.'s Mem. Supp. Summ. J. 2.)  These law firms use NAN's software when hired to collect on delinquent accounts.  (*Id*.)  In addition, NAN "services business creditors by providing an interface between the creditor and the law firms that utilize NAN software to collect the delinquent accounts." (*Id*.)  The Plaintiff has not presented any facts to dispute these facts.

Target National Bank ("Target Bank"), the financing arm of the national retail chain store, is apparently one of Defendant and NAN's clients.  (Def.'s Mem. Supp. Summ. J. 2.) Defendant states that Plaintiff maintained a Target Visa credit card account administered by

Target Bank.  (*Id.*)  After Plaintiff's credit card account became delinquent, Defendant contends that Target Bank retained a Maryland law firm to collect the debt.  (*Id.*)  It is undisputed and a matter of public record that on or about October 4, 2004, Target Bank obtained a judgment against Plaintiff in the amount of $3,588.24 plus interest, costs, and attorney's fees, in the District Court of Maryland for Frederick County.  (*Id.*)

Defendant explains that on or shortly before November 2, 2004, Target Bank advised Defendant that "it wished to obtain a likelihood of collection score on [Plaintiff's] account." (Def.'s Mem. Supp. Summ. J. 2.)  This type of score is obtained from a credit reporting agency named Experian, Inc. ("Experian") and estimates the likelihood of collection with respect to a particular account.  (*Id.*)  On or about November 2, 2004, Defendant requested and received a likelihood of collection score from Experian with respect to Plaintiff's account.  (*Id*. at 2-3.) Defendant maintains that "[a]t no time did [Defendant] or NAN access, examine, or obtain a copy of Plaintiff's credit report or advise Experian that Plaintiff had not paid a bill allegedly incurred by her."  (*Id*. at 3.)  The Plaintiff has not submitted any facts to bring this summary into question.

On August 4, 2005, Plaintiff filed her Complaint in this Court.  Three of the four defendants named in Plaintiff's Complaint—Hilco Receivables, LLC, Academy Collections, and Crown Asset Management—have been dismissed, leaving TDM as the only remaining defendant.  (*See* Paper Nos. 26 & 29.)  On October 3, 2005, Defendant filed its Motion for Summary Judgment.  (Paper No. 10.)  On October 11, 2005, Plaintiff filed a Motion to Require Defendant to Comply with Fed. R. Civ. P. 5(a), alleging that, *inter alia*, she never received a copy of Defendant's Motion for Summary Judgment.  On November 22, 2005, this Court denied

Plaintiff's Motion to Require Defendant to Comply with Fed. R. Civ. P. 5(a).  On November 15, 2005, Plaintiff filed its Motion for Partial Summary Judgment.  (Paper No. 28.)  Discovery in this matter has not commenced.

STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (emphasis added).  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court explained that only "facts that might affect the outcome of the suit under the governing law" are material.  *Id.* at 248.  Moreover, a dispute over a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The Court further explained that, in considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.  In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

When both parties file motions for summary judgment, as here, the court applies the same standards of review.  *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment—even where . . . both

parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985).  The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985).  "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman,* 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer,* 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion.").  However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non existence of a factual dispute." *Shook v. United States,* 713 F.2d 662, 665 (11th Cir. 1983).

## DISCUSSION

**I.      Discovery.**

This Court acknowledges the general principle that "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).  The nonmoving party, however, "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Techs. Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir.1996).

"If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a Rule 56(f) affidavit stating 'that it could not properly oppose a motion for summary judgment without a chance to conduct discovery.'" *Harrods Ltd.*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961). "[A] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). *See Strag v. Board of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995) (denial of Rule 56(f) motion generally appropriate "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment"); *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

Although Plaintiff is proceeding *pro se*, she appears familiar with the requirements of Fed. R. Civ. P. 56, which is quoted and discussed in her summary judgment papers.  (*See* Pl.'s Mot. in Opp'n to Summ. J. 1; Pl's Mem. Supp. Partial Summ. J. 4-5.)  Nevertheless, Plaintiff has neither filed an affidavit pursuant to Fed. R. Civ. P. 56(f) nor contended that she was unable to oppose Defendant's motion for summary judgment without discovery.  Plaintiff does request that if her motion for summary judgment is denied, then this Court should "issue a scheduling order so this case may proceed for discovery and trial."  (Pl.'s Mem. in Opp'n to Summ. J. 8.)  Even viewing Plaintiff's pleadings and summary judgment papers liberally, however, this Court finds that Plaintiff has not demonstrated a need for discovery and will therefore reach the merits of the

parties' cross-motions for summary judgment.[1]

## II.   The Fair Debt Collection Practices and Fair Credit Reporting Acts.

The Fair Debt Collection Practices Act ("FDCPA") "safeguards consumers from abusive and deceptive debt collection practices by debt collectors." *Akalwadi v. Risk Mgmt Alternatives, Inc.*, 336 F. Supp. 2d 492, 500 (D. Md. 2004) (citations omitted).  The FDCPA covers debt collectors who "regularly collect or attempt to collect, directly or indirectly, [consumer] debts owed or due or asserted to be owed or due another." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (quoting 15 U.S.C. § 1692a(6)).  Although not addressed by the parties in their summary judgment papers, Defendant appears to be a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).[2]

The Fair Credit Reporting Act was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. . . ."  15 U.S.C. § 1681(b).  Although significant portions of the FCRA regulate credit reporting agencies, "[e]ven consumer reporting agencies acting in complete good faith cannot prohibit illicit use of consumer information if

---

[1]       As noted above, this Court previously resolved Plaintiff's claim that Defendant failed to serve its Motion for Summary Judgment upon Plaintiff.  *See* BACKGROUND *supra*. Accordingly, this Court need not address Plaintiff's attempt to renew that claim in her summary judgment papers.

[2]       15 U.S.C. § 1692a(6) provides in relevant part: "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . ."  (*See also* Compl. ¶ 5 (alleging that Defendant is a "debt collector" under 15 U.S.C. § 1692a(6)).)

users are not bound to obtain consumer reports only for permissible purposes." *Hansen v. Morgan*, 582 F.2d 1214, 1220 (9th Cir. 1978).  As a result, the FCRA extends to the conduct of parties who request credit information.  *See*, *e.g.*, 15 U.S.C. § 1681s-2 (imposing obligations on persons who furnish information to consumer reporting agencies).

In this case, Plaintiff's Complaint asserts four causes of action: violation of the Fair Debt Collection Practices Act (Count I); violation of the Fair Credit Reporting Act (Count II); invasion of privacy (Count III); and reckless and wanton training and conduct (Count IV).[3] Plaintiff seeks summary judgment on Counts I and II.  Defendant seeks summary judgment on all Counts.

**III.    Cross-Motions for Summary Judgment.**

**A.    Count I.**

Count I of Plaintiff's Complaint purports to state a cause of action under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA").  This claim is based in part on the following allegation:

> The Defendant, TSYS DEBT MANAGEMENT, on November 2, 2004, has, without valid permissible purpose, obtained a consumer report on Plaintiff willfully and maliciously in direct violation of 15 U.S.C. 1681b, this also violates 15 U.S.C. 1692 because the pulling of a credit report constitutes, "continued collection activity".

(Compl. ¶ 10.[4])  After acknowledging that it does not understand what "continued collection

---

[3]    Although not organized under separate counts, Plaintiff's Complaint also alleges that Defendant violated the Maryland Consumer Protection Act, Md. Code Ann. [Com. Law] §§ 13-301 *et seq.* (LexisNexis 2005), and the Maryland Consumer Debt Collection Act, Md. Code Ann. [Com. Law] §§ 14-201, *et seq.* (LexisNexis 2005) (*See* Comp. ¶ 21.)

[4]    Plaintiff offers no support for her contention that obtaining a consumer report in violation of section 1681b of the FCRA is a violation of section 1692 of the FDCPA.  Under the

activity" means, Defendant disputes that there is any factual or legal basis for concluding that Defendant violated the FDCPA. Defendant's General Counsel stated in her affidavit that "[a]t no time did TDM or NAN access, examine, or obtain a copy of Plaintiff's credit report. . . ." (Knochel Aff. ¶ 4, Sept. 29, 2005.) In addition, Defendant contends that, even if Plaintiff's factual allegations are true, pulling a credit report is not a violation of the FDCPA. (Def.'s Mem. Supp. Summ. J. 5.) Plaintiff offers no factual support for her allegation that Defendant pulled her credit report.

In her summary judgment papers, Plaintiff discusses other factual allegations that allegedly support her cause of action under the FDCPA. Defendant attacks these allegations on the basis that they are not contained in Plaintiff's Complaint and therefore violate "the long-standing requirements of pleading causes of action." (Def.'s Mem. in Opp'n to Summ. J. 3.) As Plaintiff is proceeding *pro se*, however, this Court is required to construe her pleadings liberally. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Accordingly, this Court will construe Plaintiff's Complaint broadly and treat its general contentions as encompassing the specific allegations made by Plaintiff in her summary judgment papers.[5]

FCRA, collection is a permissible purpose for obtaining a consumer report. *See* 15 U.S.C. § 1681b(a)(3)(A) (consumer reporting agency permitted to provide an individual's consumer report to a person who "intends to use the information in connection with . . . [the] review or collection of an account of, the consumer"); *see also Hasburn v. County of Los Angeles*, 323 F.3d 801, 803 (9th Cir. 2003) ("Under § 1681b(a)(3)(A), Experian was permitted to release Hasbun's consumer credit report to the BFSO if the BFSO requested the report "in connection with . . .[the] collection of an account" of Hasbun."). Here, Defendant contends that it merely obtained a "likelihood of collection score" in connection with the collection of Plaintiff's account with Target Bank, not Plaintiff's actual credit report. (*See* Knochel Aff. ¶¶ 3-4, Sept. 29, 2005.)

    [5]    Defendant also attacks the affidavit submitted by Plaintiff. (*Id.* at 2-3 ("Plaintiff's Affidavit in the instant case is not based on personal knowledge. She merely stated that information was correct 'to the best of her knowledge and belief.' Thus, Plaintiff's Affidavit is

One such allegation is as follows:

> Defendant violated the FDCPA, namely 15 U.S.C. 1692g, when they failed to provide the Plaintiff within five (5) days after initial communication (the inquiry can be considered the initial communication) an initial written notice containing the amount of the debt, the original creditor, and the requirements stated under 15 U.S.C. § 1692g.   Whether the Court finds that the initial communication was when Defendant communicated the debt to Plaintiff's credit report, or the phone conversation between Plaintiff and Defendant, that took place on or about November 20, 2004.  The Defendant's [sic] never responded pursuant to the FDCPA ever. . . .

(Pl.'s Mem. Supp. Partial Summ. J. 5.)  The above allegations identify two candidates for the "initial communication" that is required to trigger 15 U.S.C. § 1692g.[6]  The first candidate— "when Defendant communicated the debt to Plaintiff's credit report"—cannot support a claim under the FDCPA because it is not a communication with a consumer.  *See* 15 U.S.C. § 1692g(a) (identifying "initial communication" as "with a *consumer* in connection with the collection of any debt") (emphasis added).  Defendant contends that the second candidate—"the phone conversation between Plaintiff and Defendant that took place on or about November 20,

---

defective. . . .").)  This Court is not willing to discredit a *pro se* plaintiff's affidavit for the plaintiff's failure to use the exact phrase "based on personal knowledge."  Thus, this Court interprets Plaintiff's language as indicating that her affidavit is based on personal knowledge, in fulfillment of Fed. R. Civ. P. 56(e).

[6]     15 U.S.C. § 1692g provides in part:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing — (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector. . . .

2004"—is not supported by any evidence.  Defendant submits an affidavit from its Vice President of Information Systems indicating that, after searching its telephone system database, there is no record of any activity involving Plaintiff's telephone numbers between November 1, 2004 and November 29, 2005.  (*See* Clohan Aff. ¶ 3.)  Defendant also notes that Plaintiff's affidavit does not reference a specific phone conversation on November 20, 2005.[7]  Plaintiff does not respond to these arguments or evidence.[8]  The Plaintiff can simply not avoid summary judgment by making bald allegations unsupported by evidence.

Plaintiff also argues that Defendant communicated false credit information to credit reporting agencies in violation of the FDCPA:

> Despite Plaintiff's numerous disputes regarding the Defendant's reporting the TSYS account inquiry inaccurately, Defendant never corrected the inaccuracy of reporting the account as an "in-dispute" on the trade inquiry that was entered onto Plaintiff's credit reports. The inquiry was listed as a "collection inquiry" and listed with a "collection purpose".  Defendant misrepresented the character of the account Plaintiff has had, or ever had assigned to TSYS, because any such account was the result of identity fraud. . . . Defendant's reporting the inquiry as a collection inquiry, was not a mistake as it was repeated in the other credit bureaus as well.  Defendant initially was reporting to all 3 major credit bureaus and was reporting the account as a collection purpose inquiry without notifying the consumer.

---

[7]        (*See* Robinson Aff. ¶ 4 ("Plaintiff mailed letters and made phone calls in an attempt to resolve this matter outside of litigation, but said letters went ignored.").)  Plaintiff's affidavit is not sufficiently specific to raise a genuine issue of material fact with respect to an alleged phone call on or about November 20, 2004.  *See* Fed. R. Civ. P. 56(e) ("[T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific* facts showing that there is a genuine issue for trial.") (emphasis added); *see also Anderson*, 477 U.S. at 252 (mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment).

[8]        Plaintiff did not file a response to Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment.

(Pl.'s Mem. Supp. Partial Summ. J. 5-6; *see also id.* at 2-3.)  Defendant responds by contending

that the above allegations lack factual support.  Defendant emphasizes an affidavit from its

General Counsel indicating that Defendant requested only a "likelihood of collection score" from

a single credit reporting agency, Experian.  (*See* Knochel Aff. ¶ 4, Nov. 30, 2005); *see also*

Knochel Aff. ¶ 4, Sept. 29, 2005.)  Other than requesting this score, Defendant maintains that it

reported no information about Plaintiff to any credit reporting agencies.  (*Id.*)  Defendant also

relies on an affidavit from an Account Executive at Experian to establish that a request for a

likelihood of collection score cannot be viewed by creditors or credit grantors and does not

impact Plaintiff's credit score.  (*See* Bohannon Aff. ¶ 2.)  Again, Plaintiff does not respond to

this evidence.  There is absolutely no evidence before this Court to indicate that the Defendant

took any action other than this one request for a "likelihood of collection score" from a credit

agency.

Plaintiff makes two other allegations in her summary judgment papers in an attempt to

support her cause of action under the Fair Debt Collection Practices Act.  First, Plaintiff

contends that:

> Defendant violated FDCPA 15 U.S.C. § 1692g(b)[9] by continuing
> collection activities after notice of dispute was received.  Defendant
> continued to attempt to libel and slander Plaintiff and attempt to
> collect a non-existent debt by entering inquiries that imply collection
> by reporting to credit reporting agencies the alleged inquiries relating

---

[9]15 U.S.C. § 1692g(b) provides, in part, that:

> If the consumer notifies the debt collector in writing within the thirty-
> day period described in subsection (a) of this section that the debt, or
> any portion thereof, is disputed . . . the debt collector shall cease
> collection of the debt, or any disputed portion thereof, until the debt
> collector obtains verification of the debt or a copy of a judgment. . . .

to a debt, after dispute of the inquiries were received.

(Pl.'s Mem. Supp. Partial Summ. J. 7.)  Plaintiff offers no proof that her alleged "notice of dispute" was even received, and Defendant's affidavits contain ample evidence that no such notice took place.[10]  Even if notice could be shown, the only material issue of fact is Defendant's conduct, and Plaintiff has offered no evidence that Defendant engaged in any debt collecting activities or attempted to defame[11] her.  Defendant points to affidavits from its General Counsel

---

[10]      Although Plaintiff states in her affidavit that she sent a letter by certified mail on February 25, 2005, Defendant forecasts evidence indicating that it has no record of receiving any letters from Plaintiff by certified mail from November 2, 2004 through September 15, 2005. (*See* Clohan Aff. ¶ 3; Knochel Aff. ¶ 2, Nov. 30, 2005.)  Other Circuits have held that, "[w]hile it is presumed that a properly-addressed piece of mail placed in the care of the Postal Service has been delivered, no such presumption of delivery exists for certified mail when the requested return receipt is not received by the sender."  *Mulder v. Comm'r of Internal Revenue*, 855 F.2d 208, 212 (5th Cir. 1988) (finding that an IRS notice of tax deficiency sent by certified mail, return receipt requested, was not delivered where the IRS had no return receipt on record) (citing *McPartlin v. Comm'r*, 653 F.2d 1185 (7th Cir. 1981); *see also Busquets-Ivars v. Ashcroft*, 333 F.3d 1008, 1009 (9th Cir. 2003); *Moya v. United States*, 35 F.3d 501, 504-05 (10th Cir. 1994) (affirming the district court's order granting summary judgment to the defendant where the plaintiff failed to produce any "evidence usually associated with certified mail" that the defendant received her claim pursuant to the Federal Tort Claims Act ("FTCA")).  The Fourth Circuit also noted in an unpublished opinion that "[m]ailing alone is not enough; there must be evidence of actual receipt" to satisfy the FTCA's presentment requirement.  *Rhodes v. Unites States*, No. 92-2016, 1993 WL 212495, at *2 (4th Cir. June 15, 1993).  This Court tried contacting Plaintiff at the phone number she provided to inquire as to whether she had any verification of the delivery of her letter to Defendant, but was informed that it was the wrong number.  Even if Plaintiff could produce a return receipt or printout showing delivery to Defendant, she still has not offered any factual support for her allegation that Defendant tried collecting any sort of debt from her.

[11]      "To recover for defamation under Maryland law, a plaintiff must establish that: (1) the defendant made a defamatory statement regarding the plaintiff to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff suffered harm thereby."  *Holt v. Camus*, 128 F. Supp. 2d 812, 815 (D. Md. 1999) (citations omitted).  A defamatory statement is one which "tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person."  *Id.* (citing *Batson v. Shiflett*, 602 A.2d 1191 (Md. 1992)).

indicating that Defendant's contact with credit reporting agencies is limited to a single request

for a likelihood of collection score that is visible only to Plaintiff and cannot be viewed by

creditors or credit grantors.  (*See* Knochel Aff. ¶ 4, Sept. 29, 2005; Knochel Aff. ¶ 4, Nov. 30,

2005.)  Defendant's General Counsel also provides that "no account of the Plaintiff has ever

been placed with TDM for collection."  (Knochel Aff. ¶ 5, Nov. 30, 2005.)  Thus, even viewing

the facts in a light most favorable to Plaintiff,  no reasonable jury could find that the Defendant

failed to "cease collection" of any debts under 15 U.S.C. § 1692g(b) or that Defendant defamed

Plaintiff.

Second, Plaintiff asserts that:

> Defendant violated FDCPA 15 U.S.C. 1692e § 807 (2)(3)(4)(5)(9)
> (10) and (11) by; [sic] 1) falsely claiming to have a garnishment, 2)
> falsely claiming to be an attorney, 3) falsely claiming to have
> initiated a lawsuit, 4) falsely claiming to have the authority to
> commence lawsuit on this account, 5) falsely representing that a
> lawsuit was already in progress or in the process of being commenced
> in an attempt to collect this debt, 6) failing to disclose that the
> communication was from a debt collector and any information
> obtained will be used for that purpose and 7) falsely claiming to be
> a law office.

(*Id.*)  Plaintiff does not offer any factual support for these allegations or respond to any of the

evidence forecasted or arguments made by Defendant.

In sum, both parties have moved for summary judgment with respect to Plaintiff's cause

of action under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (Count I).

Defendant submitted evidence in connection with its Motion for Summary Judgment, and also in

connection with its opposition to Plaintiff's Motion for Partial Summary Judgment.  Plaintiff has

neither disputed that evidence nor responded to the legal arguments made by Defendant.  As a

result, this Court finds that there is no need to conduct discovery on Plaintiff's cause of action

under the FDCPA and there is no genuine dispute with respect to the evidence forecasted by

Defendant.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED and

Plaintiff's Motion for Partial Summary Judgment is DENIED with respect to Plaintiff's cause of

action under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (Count I).

### B.    Count II.

Count II of Plaintiff's Complaint purports to state a cause of action under the Fair Credit

Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").  That claim is based in part on the

following allegation:

> On or about November 2, 2004, Defendant, TSYS DEBT
> MANAGEMENT entered an "inquiry" about Plaintiff to a credit
> reporting agency (CRA) Experian Information Solutions
> (EXPERIAN).  This inquiry contained derogatory information that
> Plaintiff had not paid a bill allegedly incurred by her.  This
> derogatory information is the only derogatory information contained
> within Plaintiff's consumer reports and has caused great damage to
> Plaintiff.

(Compl. ¶ 17.)  Plaintiff also alleges that, on August 2, 2005, she contacted Experian by

telephone and was informed that Defendant made a "hard inquiry" that was marked "with the

notation that 'credit activity' would be visible to current and potential future creditors."  (*Id.* ¶

20.)  However, she offers no proof of this phone conversation, and does not contradict the

affidavits offered by Defendant.

Defendant notes that its contact with Experian was limited to requesting a "likelihood of

collection score."  (Def.'s Mem. Supp. Summ. J. 2.)  Although not addressed by the parties, the

15

likelihood of collection score that Defendant received from Experian appears to fall within the definition of "consumer report" under the FCRA. (*See* Knochel Aff. ¶ 4, Sept. 29, 2005 (describing likelihood of collection score)); *see also* 15 U.S.C. § 1681a(d) (defining "consumer report"). As noted above, collection is a permissible purpose for obtaining a consumer report under the FCRA. *See* 15 U.S.C. § 1681b(a)(3)(A) (consumer reporting agency permitted to provide an individual's consumer report to a person who "intends to use the information in connection with . . . [the] review or collection of an account of, the consumer"); *see also Hasburn*, 323 F.3d at 803 ("Under § 1681b(a)(3)(A), Experian was permitted to release Hasbun's consumer credit report to the BFSO if the BFSO requested the report "in connection with . . .[the] collection of an account" of Hasbun.").

Defendant also points out that Plaintiff's allegations lack factual support and are directly contradicted by evidence submitted by Defendant. First, Plaintiff has offered no evidence to suggest that Defendant's November 2 inquiry "contained derogatory information that Plaintiff had not paid a bill allegedly incurred by her." (Compl. ¶ 17.) Second, Defendant submits an affidavit from its General Counsel providing that "[a]t no time did TDM or NAN . . . advise Experian that Plaintiff had not paid a bill allegedly incurred by her." (Knochel Aff. ¶ 4, Sept. 29, 2005.) In addition, Defendant provides an affidavit from an Account Executive at Experian indicating that a request for a likelihood of collection score cannot be viewed by creditors or credit grantors and does not impact Plaintiff's credit score. (*See* Bohannon Aff. ¶ 2.) Finally, Defendant contends that even if Plaintiff's allegation that Defendant provided information to Experian was true, it would not give rise to a cause of action because the information that

Defendant allegedly provided is accurate in this particular case.[12]  Here, Defendant alleges that

Plaintiff was delinquent in her payment to Target Bank, who obtained a judgment against

Plaintiff before authorizing Defendant to request a likelihood of collection score from Experian.

Plaintiff has not challenged the evidence submitted by Defendant with respect her account with

Target Bank.  As a result, even if Plaintiff's suggestion that Defendant informed Experian about

Plaintiff's delinquent account is true, that information could not have violated 15 U.S.C. § 1681s

because it was accurate.  Again, Plaintiff does not challenge Defendant's evidence or argument

with respect to this claim.

In her summary judgment papers, Plaintiff identifies other allegations to support her

claim for relief under the FCRA.  One such allegation provides:

> Defendant violated 15 U.S.C. § 1681s-2(a) for not marking the
> inquiry in dispute after Plaintiff's original letters to Defendant.  As
> per the FCRA, a notation in the trade-line of "in dispute" or similar
> verbiage must be included in the trade-line as per 15 U.S.C. § 1681s-
> 2(a) which governs the responsibilities of furnishers of information
> to consumer reporting agencies.

(Pl.'s Mem. Supp. Partial Summ. J. 6.)  As discussed above, Plaintiff has presented no evidence

that Defendant received any letters from her sufficient to constitute notice of a dispute, and

Defendants have evidence directly contradicting that assertion.  (*See supra* note 10.)  Even if

Plaintiff could prove that she gave notice of dispute to Defendant, she has not contradicted

Defendant's evidence that its inquiry was limited solely to a likelihood of collection score.

Plaintiff makes another set of allegations in her summary judgment papers to support her

---

[12]     *See* 15 U.S.C. § 1681s-2(a)(1)(A) ("A person shall not furnish any information
relating to a consumer to any consumer reporting agency if the person knows or has reasonable
cause to believe that the information is *inaccurate*.") (emphasis added).

cause of action under the FCRA:

> In accordance with the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*, Defendant violated said act as outlined below: § 604 states that: (a) Plaintiff never appeared before a grand jury and to Plaintiff's knowledge no court has granted authority for an inquiry under 1681b(a)(1); (b) Plaintiff has not provided written authorization; (c) Plaintiff has not sought credit with Defendant; (d) Plaintiff has no accounts that are delinquent or in collections with Defendant; (e) Defendant has not extended credit to Plaintiff; (f) Plaintiff has not sought employment with Defendant; (g) Defendant is not an insurance carrier and Plaintiff has not sought insurance underwriting or coverage by or through Defendant or affiliates of Defendant; (h) Defendant does not issue licenses and Plaintiff has not sought or applied for licensure by or through Defendant or affiliates of Defendant; (i) Defendant cannot permissibly pull an inquiry under the "Patriot Act", the guise of "National Security", nor for "child support enforcement", as the Defendant is not normally engaged in such activities nor is authorized to do so; (j) Plaintiff does not intend to invest, nor has sought investment from Defendant, and this does not qualify the Defendant, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation, as there was none.

(Pl.'s Mem. Supp. Partial Summ. J. 7.)  These allegations appear to relate to the circumstances under which it is permissible for a consumer reporting agency to furnish a consumer report. *See* 15 U.S.C. § 1681b(a).  Defendant responds by observing that there is no factual basis for concluding that these allegations are supported by any evidence.  In addition, Defendant notes that these claims are directly contradicted by the affidavits submitted by Defendant. Specifically, Defendant's General Counsel affirmed that Defendant only requested a likelihood of collection score on Plaintiff's account and did not access, examine, or obtain a copy of Plaintiff's credit report.  (*See* Knochel Aff. ¶ 4, Sept. 29, 2005.)  Plaintiff has not responded to this evidence.

In Count II of her complaint, Plaintiff also alleges claims under Maryland's Consumer Protection Act, specifically Md. Code Ann. [Com. Law] §§ 13-301, *et seq*. (LexisNexis 2005),

and Consumer Debt Collection laws, Md. Code Ann. [Com. Law] §§ 14-201, *et seq*. (LexisNexis 2005).  (Compl. ¶ 21.)  However, Plaintiff's Complaint contains no facts specifically relating to these claim, and she did not address the claims in either her Motion for Partial Summary Judgment or her Opposition to Defendant's Motion for Summary Judgement.  Thus, there is no genuine issue of material fact as to these claims.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's cause of action under Subtitle 3 of Maryland's Consumer Protection Act, Md. Code Ann. [Com. Law] §§ 13-301, *et seq*. (LexisNexis 2005) and Md. Code Ann. [Com. Law] §§ 14-201, *et seq*. (LexisNexis 2005).

In sum, both parties have moved for summary judgment with respect to Plaintiff's cause of action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. (Count II).  Defendant submitted evidence in connection with its Motion for Summary Judgment, and also in connection with its opposition to Plaintiff's Motion for Partial Summary Judgment.  Plaintiff has neither disputed that evidence nor responded to the legal arguments made by Defendant.  As a result, this Court finds that there is no need to conduct discovery on Plaintiff's cause of action under the FCRA and there is  no genuine dispute with respect to the evidence forecast by Defendant.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Partial Summary Judgment is DENIED with respect to Plaintiff's cause of action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. (Count II).

## C.    Count III.

Count III of Plaintiff's Complaint purports to state a cause of action for invasion of privacy based on the following allegation:

> By obtaining Plaintiff's credit report without a permissible purpose
> as defined in 15 U.S.C. § 1681b, Defendant's [sic] are in direct

> violation of the FCRA.  The numerous pulling [sic] of Plaintiff's
> credit report is an invasion of Plaintiff's privacy and right to
> seclusion.

(Compl. ¶ 29.)  In Maryland, "one who intentionally intrudes, physically or otherwise, upon the

solitude or seclusion of another or his private affairs or concerns, is subject to liability to the

other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable

person." *Bailer v. Erie Ins. Exch.*, 687 A.2d 1375, 1380-81 (Md. 1997) (quoting Restatement

(Second) of Torts  § 652B (1977)).  Plaintiff contends that Defendant intentionally pulled her

private credit report and therefore invaded her seclusion.

Defendant emphasizes, again, that it only requested a likelihood of collection score on

Plaintiff's account from Experian but did not access, examine, or obtain a copy of Plaintiff's

credit report.  (*See* Knochel Aff. ¶ 4, Sept. 29, 2005.)  Thus, it contends, Defendant did not

intentionally intrude upon Plaintiff's solitude.  Even if this Court assumes that Defendant did

pull Plaintiff's credit report, it appears that such activity would have been authorized under the

FCRA.  *See* 15 U.S.C. § 1681b(a)(3)(A) (consumer reporting agency permitted to provide an

individual's credit report to a person who "intends to use the information in connection with . . .

[the] review or collection of an account of, the consumer"); *see also Hasburn v. County of Los*

*Angeles*, 323 F.3d 801, 803 (9th Cir. 2003) ("Under § 1681b(a)(3)(A), Experian was permitted to

release Hasbun's consumer credit report to the BFSO if the BFSO requested the report "in

connection with . . .[the] collection of an account" of Hasbun.").  Plaintiff does not respond to

this evidence or argument.  In addition, no reasonable jury could find that a single request for

likelihood of collection score, or even pulling a credit report, would be highly offensive to a

reasonable person.

This Court finds no genuine issue of material fact with respect to Plaintiff's claim for invasion of privacy, and Defendant is entitled to judgment as a matter of law.  Therefore, Defendant's Motion for Summary Judgement is GRANTED with respect to Count III.

### D.    Count IV.

Count IV of Plaintiff's Complaint purports to state a cause of action for "reckless and wanton training and coduct [sic]."  Maryland does not recognize a separate cause of action for reckless and wanton conduct or training.  As such, there is no genuine issue of material fact, and no reasonable jury could find for Plaintiff.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to Count IV.

<u>CONCLUSION</u>

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.  A separate Order and Judgment follow.

Dated: August 25, 2006                         /s/_____
                                                                 Richard D. Bennett
                                                                 United States District Judge